1
2
3
4
5
6
7

8    UNITED STATES DISTRICT COURT

9    SOUTHERN DISTRICT OF CALIFORNIA

10

11   ANNA LEVY, an individual; ANNA
     LEVY in a Representative capacity for her
12   late Husband, Steven Augusta,
13                                Plaintiff,
14   v.
15   FCI LENDER SERVICES, INC., a
     California Corporation; KEVIN PRINCE,
16   in his individual and corporate capacity;
     MILES FARQUHAR in his individual
17   and corporate capacity; SC FINANCIAL
     SERVICES, a California Corporation;
18   ROGER SOKOLOFF FAMILY TRUST
     dated 6/26/17; MCKENNA DUGGAN
19   FAMILY LIVING TRUST DATED
     2/5/2013; JAMES GARRY HEBERT;
20   MICHELLE HEBERT; EDGEHILL
     INVESTMENTS, LLC; AND KS
21   CAPITAL, INC. d/b/a PARSE
     MORTGAGE SERVICES; and DOES 1
22   to 100, inclusive,
23
24                                Defendants.
25

Case No.:  18cv2725-GPC(WVG)

**ORDER**

**1) GRANTING IN PART AND
DENYING IN PART DEFENDANT
KEVIN PRINCE'S MOTION TO
DISMISS WITH LEAVE TO
AMEND; AND**

**2) GRANTING KS CAPITAL INC.'S
MOTION TO DISMISS AND
MOTION FOR A MORE DEFINITE
STATEMENT WITH LEAVE TO
AMEND**

**[Dkt. Nos. 70, 78.]**

26
27
28

Before the Court is Defendant Kevin Prince's motion to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure ("Rule") 8, 12(b)(1), 12(b)(6), and 12(b)(7). (Dkt. No. 70.) Plaintiff Anna Levy filed an opposition and Defendant replied. (Dkt. Nos. 72, 77.) Defendant KS Capital, Inc. also filed a motion pursuant to Rule 12(b)(6), 9(b) and 12(e). (Dkt. No. 78.) An opposition and reply were filed, (Dkt. Nos. 95, 97). Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendant Prince's motion to dismiss with leave to amend and GRANTS Defendant KS Capital, Inc.'s motion to dismiss, and motion for a more definite statement with leave to amend.

## Procedural Background

On October 23, 2018, Anna Levy ("Plaintiff" or "Anna"), suing on behalf of herself as an individual and in a representative capacity as executor of the estate of her late husband, Steven Augusta ("Steven" or "decedent"), filed a complaint in the Superior Court of the State of California for the County of San Diego against Defendants for manipulating decedent into fraudulently obtaining a second mortgage loan in the amount of $450,000 on the family home. (Dkt. No. 1-2, Compl.) Plaintiff alleges that Defendants knew of decedent's financial state, preyed on him and directed him to obtain a commercial loan, to avoid compliance with the protections afforded under Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA"). (Id. ¶ 5.) Specifically, Defendants aided Steven with manufacturing a false loan application to obtain approval indicating a fraudulent "business purpose" and producing a fake lease showing that the family home was being used as a rental property to create the pretense that Steven generated additional income. (Id. ¶ 4.) As a result of Steven's inability to pay repay the loan and feeling the "crushing weight of his actions upon him", he committed suicide on April 18, 2018. (Id. ¶¶ 59, 190, 193.)

On November 30, 2018, the case was removed to this Court. (Id.) On August 5, 2019, pursuant to the Court's order on Defendants Sokoloff and Edgehill's motion to strike and quash service of summons and Defendant KS Capital's motion to dismiss,

2

Plaintiff filed the operative first amended complaint ("FAC") alleging sixteen causes of action against Defendants Miles Farquhar ("Farquhar"), Kevin Prince ("Prince"), FCI Lender Services, Inc. ("FCI Lender"), SC Financial Services ("SC Financial"), the Roger Sokoloff Family Trust dated 6/26/17, the McKenna Duggan Family Living Trust dated 2/5/2013, James Garry Hebert ("James Hebert"), Michelle Hebert ("Michelle Hebert"), Edgehill Investments, LLC ("Edgehill Investments"), and KS Capital Inc., dba Parse Mortgage Services ("KS Capital"). (Dkt. No. 64.)

The sixteen causes of action are: 1) violation of Truth in Lending Act ("TILA") and Regulation Z; 2) violation of Real Estate Settlement Procedures Act ("RESPA"); 3) concealment; 4) intentional misrepresentation; 5) negligent misrepresentation; 6) unlawful and unfair business practices, Cal. Bus. & Prof. Code sections 17200; 7) negligence; 8) breach of fiduciary duty; 9) breach of duty of loyalty; 10) breach of covenant of good faith and fair dealing; 11) declaratory relief; 12) injunctive relief; 13) negligent infliction of emotional distress; 14) conspiracy to violate TILA & Regulation Z; 15) wrongful death based on negligence; and 16) conspiracy to commit wrongful death. (Dkt. No. 64, FAC.)

On August 19, 2019, Defendant Prince filed a motion to dismiss which is fully briefed. (Dkt. Nos. 70, 72, 77.) On September 9, 2019, Defendants FCI Lender Services, Inc., Miles Farquhar and SC Financial Service filed their First Amended Answers. (Dkt. Nos. 74-76.) Pursuant to a joint motion, the Lender Defendants, Roger Sokoloff, Trustee of the Roger Sokoloff Family Trust; Thomas McKenna and Bridgette Duggan, Trustees of the McKenna-Duggan Family Living Trust; and Edgehill Investments were granted an extension of time to file their response until November 22, 2019. (Dkt. Nos. 83, 84.) On September 16, 2019, Defendant KS Capital, Inc. filed a motion to dismiss or for a more definite statement which is also fully briefed. (Dkt. Nos. 78, 95, 97.)

## Factual Background

Decedent Steven Augusta lived at 122 North Helix Avenue, Solana Beach, CA 92075, the Family Home, with his wife, Anna Levy and their two daughters, ages 9 and

11. (Dkt. No. 64, FAC ¶ 3.) The Family Home was never rented or leased from January 1, 2007 through the present. (Id. ¶ 35.) Anna was married to Steven from March 21, 2007 until his death on April 18, 2018. (Id. ¶ 36.) Anna and Steven separated on January 21, 2018. (Id. ¶¶ 36, 58.) During the marriage, the decedent handled all of his finances until his death on April 18, 2018. (Id. ¶ 36.) Anna had no knowledge about any of Steven's actions concerning the fraudulent loan. (Id. ¶ 38.)

Steven and Defendant Prince were friends before engaging in the alleged fraudulent loan. (Id. ¶ 40.) Around September 2017, Steven consulted with Prince about taking out a second mortgage on the Family Home in the amount of $450,000. (Id. ¶ 37) Because Steven was not able to obtain a conventional loan, with the help of Prince, he created fake information and documents to obtain a loan. (Id. ¶¶ 39, 40.) Prince advised Steven on the procedures he needed to take to obtain the loan. (Id. ¶ 40.) For example, Prince told Steven to falsely state he sought a business loan in order to "fund his municipal bond business." (Id.) They created a fake lease agreement to represent that the Family Home was a rental property, when it was not, in order to create the appearance that Steven earned more income than he really made so he could qualify for the loan. (Id. ¶ 39, 40; id., Ex. 1.)

With Prince's guidance and instruction, Steven completed and signed a Uniform Residential Loan Application where Steven wrote his monthly income was $30,000 per month even though he was actually making a little over $100,000 per year. (Id. ¶ 41.) In September 2017, Steven approached two lending companies and received conditional approval letters but those companies ultimately decided against providing the loan. (Id. ¶ 43.) Then Prince put Steven in touch with Defendant Farquhar and his own company, Defendant SC Financial. (Id. ¶ 45.) Despite apparent discrepancies in the loan, SC Financial extended a loan to Steven. (Id.) Farquhar knew or should have known the terms of the loan were fraudulent. (Id. ¶¶ 47, 48.) Defendant FCI Lender serviced the loan and collected the payments from Steven until his death on April 18, 2018. (Id. ¶ 45.) "The Promissory Note and Deed of Trust were subsequently entered into and signed by

Defendants ROGER TRUST, MCKENNA TRUST, JAMES HEBERT, MICHELLE HEBERT, EDGEHILL, and KS CAPITAL, making each of them a party to the fraudulent lending transaction." (Id. ¶ 46.)

Throughout the entire process from applying for the fraudulent loan, obtaining approval of the fraudulent loan and receiving the actual funds, Prince acted as a liaison between Steven and FCI Lender, Farquhar and SC Financial. (Id. ¶ 55.) Defendants aided Steven to obtain a fraudulent second mortgage loan as a commercial non-owner occupied loan which Defendants purposely selected in order to avoid all protections afforded to borrowers on residential homes. (Id. ¶ 56.) The Family Home was acquired during the marriage so Anna has a community property interest in the Family Home. (Id.)

On April 18, 2018, Steven committed suicide by hanging himself with an electrical cord in his RV. (Id. ¶ 59.) After his death, Anna began receiving Notices of Default from FCI Lender about delinquent mortgage payments in May 2018. (Id. ¶ 60.) She continues to receive the Notices and threats of foreclosure. (Id.) Plaintiff argues that Defendants knew or should have known Steven could not pay the loan due to his financial state and the loan was void from its inception as violative of TILA and RESPA. (Id. ¶ 61.) Plaintiff will suffer enormous detriment and a forfeiture of her long-time family home through no involvement or fault of her own but rather, the fraudulent acts of Steven and each Defendant. (Id. ¶ 62.) On March 15, 2019, Anna was appointed by the probate court as the executor of Steven's estate in Case No: 37-2018-00021266-PR-PL-CTL. (Id. ¶ 10.)

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

5

## I.      Defendant Kevin Prince's Motion to Dismiss[1]

## A.      Legal Standard on Federal Rule of Civil Procedure 12(b)(1)

"Though lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted). "[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Id. The Court "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. Id. Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction. See Chandler v. State Farm Mut. Auto Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010).

Article III standing requires a plaintiff to plead three elements. First, a plaintiff must plead an injury in fact, which must be "concrete and particularized" and "actual or

---

[1] The Court notes that Defendant Kevin Prince asserts dismissal under Rule 8, Rule 12(b)(1), Rule 12(b)(6), and Rule 12(b)(7), yet provides no legal standard to support his motion. The Court in ruling on Prince's motion provides the relevant legal standard.

imminent." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Second, there must be a "causal connection between the injury and the conduct complained of"-- that is the injury must be "fairly traceable" to the challenged conduct.  Id. (internal quotations omitted).  Third, it must be likely that plaintiff's injury will be "redressed by a favorable decision."  Id.

In his motion, without analysis, Prince merely cites to Rules 12(b)(1) and 12(b)(6) to conclude that Plaintiff has no standing to pursue her claims individually.  (Dkt. No. 70-2 at 11[2].)  This indicates that he is moving under statutory standing and Article III standing yet as discussed below, fails to provide proper legal analysis on each cause of action in the FAC.

**B.     Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "Threadbare recitals of the elements of a cause of

---

[2] Page numbers are based on the CM/ECF pagination.

action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. See Desoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

## C. Legal Standard on Federal Rule of Civil Procedure 12(b)(7)

A party may move to dismiss a case for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 "imposes a three-step inquiry: (1) Is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a)? (2) If so, is it feasible to order that absent party to be joined? (3) If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?" Salt River Project Agric. Improvement & Power Dist. v. Lee, 672 F.3d 1176, 1179 (9th Cir. 2012) (citation omitted). "The Ninth Circuit has held that a court should grant a 12(b)(7) motion to dismiss only if the court determines that joinder would destroy jurisdiction and the nonjoined party is necessary and indispensable." Biagro W. Sales Inc. v. Helena Chem. Co., 160 F. Supp. 2d 1136, 1141 (E.D. Cal. 2001). "A motion to dismiss for failure to join an indispensable party requires the moving party to bear the burden in producing evidence in support of the motion." Id. "A Rule 12(b)(7) motion for failure to join an indispensable party demands a fact specific and practical inquiry." Id.;

The court may consider evidence outside the pleadings.  Id.

**D.    Analysis**

### 1.    Defendant Prince Sued in His Individual and Corporate Capacities

Defendant argues that the amended complaint unintelligibly sues Prince as some sort of corporate entity or officer but does not allege that Prince is an owner, officer or director of Equity Partners and does not articulate any reason why she is suing an alleged corporate officer and not the company itself.  (Dkt. No. 70-2 at 6-7.)  Plaintiff disagrees and responds that paragraph 13 of the FAC specifically states that Prince is being sued, in his individual and corporate capacity as the "president and officer of his own company, Equity Partners . . . ."  (Dkt. No. 64, FAC ¶ 13.)  Moreover, the exhibits attached to the FAC[3] show that he counseled and exchanged emails with decedent for fraudulent purposes on behalf of the company.

The Court agrees with Plaintiff that contrary to Defendant's argument, the FAC states that Prince is a "competent adult" and is the "president and officer of his own company, Equity Partners" and "acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of all the corporate defendants including the acts and practices set forth in this complaint."  (Id.)  Furthermore, Prince transacted business with Steven Augusta as a lender, loan officer, and/or mortgage broker.  (Id.)  Plaintiff sufficiently alleges claims against Prince in his individual and corporate capacity.

Prince does not provide any legal authority to support his argument, including the claim that if Plaintiff is suing a corporate officer, she must also sue the corporate entity. The Court declines to consider an argument that is not legally supported.  Accordingly, the Court DENIES Defendant's motion to dismiss on this issue.

### 2.    Fifteenth Cause of Action - Wrongful Death and Sixteenth Cause of

---

[3] The Court may consider documents attached to the complaint on a motion to dismiss.  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

9

**Action - Conspiracy to Commit Wrongful Death**

Defendant Prince argues that the wrongful death and conspiracy to commit wrongful death fail to state claim because Plaintiff has failed to allege proximate causation. (Dkt. No. 70-2 at 8.) There are no allegations that the alleged wrongful conduct was foreseeable and in fact caused decedents "mental illness which result[ed] in an uncontrollable impulse to commit suicide." Plaintiff responds that she has adequately pled negligent wrongful death citing paragraphs 185-204 of the FAC. She argues that when discovery is completed, the evidence will demonstrate causation and these issues are for the jury; therefore, it would be improper for the court to dismiss the claim at this early stage.

At the early stage of the proceedings, Plaintiff must still sufficiently allege facts to support a cause of action for wrongful death and conspiracy to commit wrongful death as required by Rule 8. See Twombly, 550 U.S. at 570.

A decedent's surviving spouse, and children have standing to bring a wrongful death cause of action. Cal. Code Civ. Proc. § 377.60(a). Wrongful Death can be predicated on legal theories of negligence and strict liability. Norgart v. Upjohn Co., 21 Cal. 4th 383, 390 (1999) ("wrongful act or neglect" on the part of one or more persons that (2) "cause[s]" (3) the "death of [another] person"). "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." Quiroz v. Seventh Ave. Ctr., 140 Cal. App. 4th 1256, 1263 (2006) (emphasis omitted). A wrongful death claim based on negligence requires allegations of the elements of negligence. Hayes v. Cnty. of San Diego, 736 F.3d 1223, 1231 (9th Cir. 2013) ("To support a claim of negligent wrongful death . . ., a plaintiff must establish the standard elements of negligence: defendants owed a duty of care; defendants breached their duty; and defendants' breach caused plaintiff's injury.").

To establish proximate causation, a plaintiff must show "that the defendant's negligence caused the suicidal person to suffer an "uncontrollable impulse to commit

suicide." Corales v. Bennett, 567 F.3d 554, 573 (9th Cir. 2009). In Corales, the Ninth Circuit relied on Tate v. Canonica, 180 Cal. App. 2d 898 (1960) where the court of appeal addressed proximate causation in a case for wrongful death based on intentional conduct and negligence. For negligence, the court of appeal distinguished between a circumstance where the decedent can control the impulse to commit suicide with a decedent's inability to control that impulse. Id. at 915.

In Corales, a fourteen-year old eighth grade student along with other students walked out of school to participate in a neighborhood protest and they were disciplined for the one-day absence by the vice principal who "took away one of their year-end activities and lectured them harshly regarding the possible legal consequences of truancy, including police involvement, a $250 fine, and a juvenile hall sentence." Id. at 559. The student committed suicide after school that day. Id. On the issue of negligent wrongful death, the Ninth Circuit affirmed the summary judgment in favor of the defendant because the expert report did not provide an opinion about whether the decedent had an uncontrollable impulse to commit suicide. Id. at 572-73. The court noted that after the incident with the vice-principal, the decedent attended classes, spoke with a fellow student and his mother and wrote a detailed suicide note before committing suicide. Id. at 573. This shows he had the opportunity to appreciate the nature of his actions and no proximate causation was shown. Id. The court rejected the Plaintiff's argument that causation is met by showing the decedent's death was foreseeable. Id. In fact, the decedent's suicide was "unforeseeable and extraordinary." Id.

In another case, the district court granted summary judgment on the issue of negligent wrongful death when the defendant conducted a welfare check on the decedent, concluded they did not have probable cause to take him into custody under section 5150[4], and left. Gaylor v. Morin, Case No. EDCV 16-1224 JGB(KKx), 2018 WL 6133405, at

---

[4] California Welfare and Institutions Code section 5150 provides for an involuntary mental health commitment. Cal. Welfare & Inst. Code § 5150.

*2, 6-7 (C.D. Cal. Jan. 3, 2018). Plaintiff's wrongful death claims was based on defendants' failure to commit decedent to a facility after performing the 5150 check. Id. at *7. The court held that plaintiff failed to establish that the defendants proximately caused the suicide because they failed to establish the "defendant's negligence caused the suicidal person to suffer an 'uncontrollable impulse to commit suicide.'" Id. at *7 (citing Corales, 567 F.3d at 573). Because decedent died five days after the responding deputies conducted the welfare check, and there was no evidence that the defendants had additional contact with the decedent, any "uncontrollable impulse" dissipated during the five-day gap. Id.

Here, the FAC alleges that as a "direct result of Defendants' negligent actions and omissions, STEVEN felt the crushing weight of his actions upon him and at the age of 52 committed suicide by hanging himself with an electrical cord in his RV." (Dkt. No. 64, FAC ¶ 190.) The FAC also requests that the wrongful death "serve as a substitution for causation and foreseeability, because [decedent's] situation applies to other individuals in society generally when people over encumber themselves financially, and commit suicide as a result because they cannot handle the weight of their finances." (Id. ¶ 196.) These allegations do not amount to an allegation that Prince's negligence caused the decedent to suffer an "uncontrollable impulse to commit suicide." See Bremer v. Cnty. of Contra Costa, Case No. 15cv1895-JSC, 2015 WL 5158488, at *5 (N.D. Cal. Sept. 2, 2015) (granting motion to dismiss wrongful death claim with leave to amend for failing to allege any facts that defendant's negligence caused the decedent to suffer an "uncontrollable impulse to commit suicide."). Accordingly, the Court GRANTS Defendant's motion to dismiss the fifteenth cause of action for wrongful death based on negligence.

On the sixteenth cause of action for conspiracy to commit wrongful death, Defendant does not provide any legal analysis presumably assuming that the same proximate causation element applies to a conspiracy to commit wrongful death. However, because Defendant fails to provide any legal support, analysis or relevant

18cv2725-GPC(WVG)

arguments on the sixteenth cause of action, the Court DENIES Defendant's motion to dismiss the sixteenth cause of action as unsupported.

### 3. Joinder of Indispensable Parties

Defendant Prince argues that the decedent's two minor children must be joined because they are indispensable parties to the wrongful death claim and appears to move to dismiss pursuant to Rule 12(b)(7). (Dkt. No. 70-2 at 9-10.) Plaintiff argues that joinder of the two minor children is not necessary based upon her capacity to sue as executor of the decedent's estate on behalf of the two minors.

"A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by **the decedent's personal representative on their behalf:** (a) The decedent's surviving spouse, children, and issue of deceased children, or, if none, the persons who would be entitled to the property of the decedent by intestate succession." Cal. Code Civ. Proc. § 377.60 (emphasis added).

Each child has a "personal and separate cause of action, and a separate rather than joint interest." Ruttenberg v. Ruttenberg, 53 Cal. App. 4th 801, 807-08 (1997). A wrongful death cause of action is considered joint, single and indivisible. Id. at 807. It is joint because "it is subject to the requirement that all heirs should join in the action and that a single verdict should be rendered for all recoverable damages", it is single because "only one action for wrongful death may be brought whether, in fact, it is instituted by all or only one of the heirs, or by the personal representative of the decedent as statutory trustee for the heirs" and it is indivisible because "it is meant that there cannot be a series of suits by heirs against the tortfeasor for their individual damages." Id. at 807 (quoting Cross v. Pac. Gas & Elec. Co., 60 Cal. 2d 690, 694 (1964)). Therefore, an heir who files a wrongful death action must join all known heirs in the action. Cross, 60 Cal. 2d at 694; Ruttenberg, 53 Cal. App. 4th at 808 ("Omitted heirs, however, are "'necessary parties,' and plaintiff heirs have a mandatory duty to join all known omitted heirs in the 'single action' for wrongful death.").

However, a personal representative of the deceased may bring an action on behalf of the heirs.  Adams v. Superior Ct., 196 Cal. App. 4th 71, 77 (2011).  Section 377.60 specifically provides that the decedent's personal representative may bring an action on behalf of the heirs.  Cal. Civ. Proc. Code § 377.60.  A personal representative "may sue without joining as parties the persons for whose benefit the action is prosecuted."  Cal. Civ. Proc. Code § 369.  A personal representative includes an executor.  Cal. Prob. Code § 58.

Here, Plaintiff claims she holds the claims and capacity to sue as executor of the decedent's estate on behalf of the minor children who are beneficiaries to the decedent's estate.  Plaintiff, as the personal representative of the estate, may maintain a suit on the children's behalf and the children are not necessary parties and need not be joined.  Accordingly, the Court DENIES Prince's motion to dismiss under Rule 12(b)(7).

### 4. Plaintiff's Standing in Her Individual Capacity

Defendant Prince argues that with the exception of the wrongful death claims, Plaintiff, suing in her individual capacity, lacks standing to assert all remaining 14 claims relating to the loan contract and business torts relating to the loan contract because she was not a party to the loan contract, not the owner of the property, and was never in any fiduciary relationship with any of the Defendants.  (Dkt. No. 70-2 at 10-11.)  In response, Plaintiff states she has standing to bring the case in her individual capacity under the community property laws and the presumption of undue influence that arises from the interspousal transfer deed that was executed without any consideration.

Prince generally argues that Plaintiff, in her individual capacity, lacks standing without reference to any cause of action as it specifically relates to him as the mortgage broker.[5]  In addition, Prince fails to identify which standing analysis, Article III or

---

[5] The FAC asserts that Prince was a "lender and/or loan servicer, and/or mortgage broker." (Dkt. No. 64, FAC ¶ 13), and fails to identify Prince's specific role.  The Court has gleaned from the allegations in the FAC and the reference to Prince as a loan broker in the parties' brief that he was the mortgage broker.

statutory standing, he relies on.  See In re Capacitors Antitrust Litig., 154 F. Supp. 3d 918, 924-25 (N.D. Cal. 2016) (Supreme Court authority directs that "Article III standing be measured claim by claim" and Article III standing is separate and distinct from statutory standing).  Consequently, the Court must deny his motion on this issue as legally and factually unsupported.

However, because Plaintiff's response as to standing relies solely on the faulty argument that she has a community property interest in the Family Home based on the presumption of undue influence, the Court considers her argument, in the interest of efficiency, for purposes of her filing a second amended complaint.

Plaintiff and decedent were married on March 21, 2007.  (Dkt. No. 64, FAC ¶ 36.) The FAC alleges that the Family Home was acquired during the marriage; therefore, she claims she has a community property interest in the Family Home.  (Id. ¶ 56.)  On June 1, 2007, Plaintiff Anna Levy signed an interspousal transfer deed granting Steve Augusta, her husband, the Family Home as his sole and separate property.  (Dkt. No. 70-4, Defendant Prince's RJN[6], Ex. A.)  She claims the interspousal transfer deed was signed with no consideration which raises a presumption of undue influence that voids the transfer.  Therefore, because she has one-half interest in the Family Home, Anna contends that Prince owed her a fiduciary duty concerning the fraudulent loan.  (Dkt. No. 72 at 7-8.)  Moreover, even if Prince did not know Anna had a community property interest, he should have acted as a reasonably prudent loan broker by recognizing that the interspousal transfer deed for no consideration was void.  (Id. at 8.)

---

[6]  Prince filed a request for judicial notice of the interspousal grant deed filed with the San Diego County Recorder's Office.  (Dkt. No. 70-4.)  No opposition has been filed.  Because courts take judicial notice of documents recorded with the county, the Court GRANTS Prince's request for judicial notice.  See Hotel Employees and Rest. Employees Local 2 v. Vista Inn Mgmt. Co., 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005) (taking judicial notice of publicly recorded documents with the County recorder's office); Western Federal Savings v. Heflin, 797 F. Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of documents in a county public record, including deeds of trust).

It is well established that there is a general presumption that property acquired during marriage is community property, and this rule "can be altered by agreement of the spouses." <u>In re Marriage of Haines</u>, 33 Cal. App. 4th 277, 291 (1995). Statutorily, spouses may enter into property-related transactions with each other. Cal. Fam. Code § 721(a). When they do, spouses occupy a confidential and fiduciary relationship with each other. <u>Id.</u> § 721 (b). The nature of this relationship "imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other." <u>Id.</u> "If one spouse secures an advantage from the transaction, a statutory presumption arises under section 721 that the advantaged spouse exercised undue influence and the transaction will be set aside." <u>In re Marriage of Mathews</u>, 133 Cal. App. 4th 624, 628-29 (2005) (citing <u>In re Marriage of Haines</u>, 33 Cal. App. 4th at 293-94). In other words, when one spouse deeds her interest in community property to the other spouse for no consideration, a presumption of undue influence arises. <u>In re Marriage of Burkle</u>, 139 Cal. App. 4th 712, 731 (2006). "When a presumption of undue influence applies to a transaction, the spouse who was advantaged by the transaction must establish that the disadvantaged spouse's action was freely and voluntarily made, with a full knowledge of all the facts, and with a complete understanding of the effect of the transaction." <u>In re Marriage of Fossum</u>, 192 Cal. App. 4th 336, 344 (2011).

The presumption of undue influence arises based on the confidential and fiduciary relationship between spouses. <u>See</u> Cal. Fam. Code § 721. Plaintiff seeks to extend this presumption of undue influence beyond the spousal relationship to a transaction between herself and a third party. However, Plaintiff has not provided any legal authority where courts have applied the presumption of undue influence outside the spousal relationship. <u>See e.g.,</u> <u>Kohn v. Asnani</u>, 2011 WL 664116, at *15 (Cal. Ct. App. 2011) (unpublished) ("The parties have not cited a single case that applied the presumption of undue influence in a case such as this or that addresses the applicability of the presumption to litigation between a married person and a third party creditor."). Therefore, Plaintiff cannot rely on the presumption of undue influence to support her argument that the interspousal transfer

deed is void and the Family Home is community property such that there was a fiduciary duty owed to Anna, as 50% owner of the property.

The Court concludes that the presumption of undue influence does not apply in this case. However, because Defendant has failed to demonstrate why standing is lacking as to each cause of action alleged against him, the Court DENIES Defendant's motion to dismiss as legally and factually unsupported.

### 5. Rule 8

Finally, Prince argues that the FAC is unintelligible because it is unclear which defendants are being sued for which conduct as they are all lumped together as "Defendants." Plaintiff responds that because the arguments presented above in Prince's motion to dismiss demonstrates that he is aware of why he is being sued, his argument is without merit. The Court agrees with Prince that the Complaint does not comply with Rule 8. Different defendants with different roles in the loan transaction are alleged in the complaint, yet all sixteen causes of action allege "Defendants" in each of them without specifying which allegation applies to which defendant and which Defendant is being sued under which cause of action. Plaintiff concedes that Prince is not being named in the Eleventh and Twelfth causes of action, yet that is not asserted in the FAC. Therefore, because the Court grants Plaintiff leave to amend, in filing a second amended complaint, Plaintiff must comply with Rule 8 and correct these deficiencies.

### 6. Leave to Amend

In the event the Court grants Prince's motion to dismiss, Plaintiff seeks leave to file a second amended complaint ("SAC"). Because leave to amend would not be futile, the Court GRANTS Plaintiff leave to file a SAC. See Desoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

## II. Defendant KS Capital, Inc.'s Motion to Dismiss

## A. Legal Standard on Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal

17

under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri, 901 F.2d at 699. Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. A complaint may survive a motion to dismiss only if, taking all well pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**B.     Legal Standard on Federal Rule of Civil Procedure 9(b)**

Where a plaintiff alleges fraud in the complaint, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Odom v. Microsoft Corp., 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted). Rule 9(b) also applies to claims that are "grounded in fraud" or "sound in fraud." Vess v. Ciba-Geigy Corp., U.S.A., 317 F.3d 1097, 1103-04 (9th Cir. 2003).

As to multiple fraud defendants, a plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" Vegas v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1115 (E.D. Cal. 2009) (quoting Pegasus Holdings v. Veterinary Centers of America, Inc., 38 F. Supp. 2d 1158, 1163 (C.D. Cal. 1998)). A plaintiff cannot lump multiple defendants but must state the allegations as to each defendant separately concerning that defendant's alleged participation in the fraud. Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007)

(quotation omitted).  In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 157 (1991).

**C.    Legal Standard on Federal Rule of Civil Procedure 12(e)**

Rule 12(e) provides that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  However, a motion for a more definite statement must be considered in light of the liberal pleading standards of Rule 8(a) (a complaint need only be a "short and plain statement of the claim showing that the pleader is entitled to relief [.]").  Sagan v. Apple Computer, Inc., 874 F. Supp. 1072, 1077 (C.D. Cal. 1994).  Accordingly, motions for a more definite statement are generally viewed with disfavor and are rarely granted.  Cellars v. Pac. Coast Packaging, Inc., 189 F.R.D. 575, 578 (N.D. Cal. 1999).  In assessing a motion under Rule 12(e), a court considers whether the complaint provides the defendant with a sufficient basis to frame a responsive pleading.  Federal Sav. and Loan Ins. Corp. v. Musacchio, 695 F. Supp. 1053, 1060 (N.D. Cal. 1988). Generally, the court will require a more definite statement only when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself."  Delta Educ., Inc. v. Langlois, 719 F. Supp. 42, 50 (D.N.H. 1989); Bureerong v. Uvawas, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996) ("[A] motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading.").

**D.    Analysis**

KS Capital moves to dismiss all sixteen claims against it under Rule 12(b)(6) for failure to state a claim, and Rule 9(b) for failing to plead fraud allegations with particularity.  It contends that no factual allegations are made against it and it is lumped together with the other numerous defendants that had different roles in the alleged

fraudulent loan transaction. Therefore, the FAC does not provide notice as to what is alleged against it and fails to comply with Rule 8's requirement of a "short and plain statement" of the claim. Alternatively, KS Capital also moves for a more definite statement under Rule 12(e). Plaintiff opposes.

There are only two paragraphs in the FAC that specifically name Defendant KS Capital. In describing KS Capital, the FAC alleges that KS Capital "transacts or has transacted business with Steven Augusta, residing in San Diego County, as a lender and/or loan servicer, and/or mortgage broker. At all times material to this complaint, acting alone or in concert with others, KS CAPITAL advertised, marketed, distributed, or sold the extension of credit to Steven Augusta residing in San Diego County and participated in the collection of those loans." (Dkt. No. 64, FAC ¶ 21.) Next, the FAC claims, "[t]he Promissory Note and Deed of Trust were subsequently entered into and signed by Defendants ROGER TRUST, MCKENNA TRUST, JAMES HEBERT, MICHELLE HEBERT, EDGEHILL, and KS CAPITAL, making each of them a party to the fraudulent lending transaction." (Id. ¶ 46.) The FAC consists of 49-pages with sixteen causes of actions. No factual allegations as to KS Capital's role in the alleged fraudulent loan transaction are presented. Moreover, the one alleged in paragraph 46 is mistaken. KS asserts that it is erroneously identified to be one of the lenders when, in fact, it is not. (Dkt. No. 78-1 at 11.) In opposition, Plaintiff acknowledges that KS Capital is not a lender as alleged in the FAC but, instead, is the servicer of the loan. (Dkt. No. 95.)

Without any factual allegations directed towards it, KS Capital is unable to frame a response to the FAC. Accordingly, the Court GRANTS KS Capital's motion to dismiss and GRANTS its motion for a more definite statement. Plaintiff must file a second amended complaint that complies with Rule 8 and Rule 9[7].

---

[7] The Court notes that there are allegations sounding in fraud that do not comply with Rule 9(b) as Plaintiff lumps all Defendants together on each cause of action and does not specify the acts of each

18cv2725-GPC(WVG)

**Conclusion**

Based on the above, the Court GRANTS in part and DENIES in part Defendant Prince's motion to dismiss with leave to amend. The Court also GRANTS KS Capitals motion to dismiss and motion for a more definite statement with leave to amend. Plaintiff shall file a second amended complaint curing the deficiencies noted within 30 days of the filing of the Court's Order.

IT IS SO ORDERED.

Dated: December 17, 2019

Hon. Gonzalo P. Curiel
United States District Judge

---

defendant in the alleged fraud. A plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" <u>Vegas v. JPMorgan Chase Bank, N.A.</u>, 654 F. Supp. 2d 1104, 1115 (E.D. Cal. 2009).