1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ANNA LEVY, an individual; ANNA LEVY in a Representative capacity for her late Husband, Steven Augusta,

Plaintiff,

v.

FCI LENDER SERVICES, INC., a California Corporation; KEVIN PRINCE, in his individual and corporate capacity; MILES FARQUHAR in his individual and corporate capacity; SC FINANCIAL SERVICES, a California Corporation; ROGER SOKOLOFF FAMILY TRUST dated 6/26/17; MCKENNA DUGGAN FAMILY LIVING TRUST DATED 2/5/2013; JAMES GARRY HEBERT; MICHELLE HEBERT; EDGEHILL INVESTMENTS, LLC; AND KS CAPITAL, INC. d/b/a PARSE MORTGAGE SERVICES; and DOES 1 to 100, inclusive,

Defendants.

Case No.: 18cv2725-GPC(WVG)

**ORDER**

**1) GRANTING LENDER DEFENDANTS' MOTION TO DISMISS;**

**2) GRANTING KS CAPITAL INC.'S MOTION TO DISMISS; AND**

**3) GRANTING FCI LENDER SERVICES, INC.'S MOTION TO DISMISS**

**[Dkt. Nos. 105, 111, 112.]**

Before the Court is Defendants Roger Sokoloff, Trustee of the Roger Sokoloff Family Trust (erroneously sued as The Roger Sokoloff Family Trust Dtd 6/26/17); The McKenna Duggan Family Living Trust Dtd 2/5/2013; James Garry Hebert; Michelle Hebert; and Edgehill Investments, LLC's ("Lender Defendants"), motion to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim, or in the alternative, for a more definite statement under Rule 12(e). (Dkt. No. 105.) Plaintiff Anna Levy filed an opposition and Lender Defendants replied. (Dkt. Nos. 114, 120.) Defendant KS Capital, Inc. and FCI Lender Services also separately filed a motion to dismiss pursuant to Rule 12(b)(6), Rule 9(b), and alternatively, a motion for a more definite statement under Rule 12(e). (Dkt. Nos. 111, 112.) Oppositions[1] and a joint reply were filed. (Dkt. Nos. 123, 124, 125.) Based on the reasoning below, the Court GRANTS Lender Defendants motion to dismiss; GRANTS KS Capital Inc.'s motion to dismiss; and GRANTS FCI Lender Services, Inc.'s motion to dismiss.

## Procedural Background

On October 23, 2018, Anna Levy ("Plaintiff" or "Anna"), suing on behalf of herself as an individual and in a representative capacity as executor of the estate of her late husband, Steven Augusta ("Steven" or "decedent"), filed a complaint in the Superior Court of the State of California for the County of San Diego against certain defendants for manipulating decedent into fraudulently obtaining a second mortgage loan in the amount of $450,000 on the family home causing Steven to commit suicide and causing the potential foreclosure on the family home. (Dkt. No. 1-2, Compl.)

On November 30, 2018, the case was removed to this Court. (*Id.*) On August 5,

---

[1] In her opposition, Plaintiff seeks leave to file an opposition brief that exceeds the 20-page limit pursuant to "Federal Rule 27(b)(2)(D)." (Dkt. Nos. 123-1, 124-1.) First, there is no Rule 27(b)(2)(D) and Rule 27 concerns Depositions to Perpetuate Testimony, not the length of an opposition brief. *See* Fed. R. Civ. P. 27. Second, under S.D. Local Civil Rule 7.1(h), an opposition brief must not exceed a total of twenty-five pages in length. The opposition briefs are each 24 pages. Therefore, Plaintiff's request seeking leave to file an oversized opposition brief is denied as unnecessary.

2019, pursuant to the Court's order on Defendants The Roger Sokoloff Family Trust and Edgehill Investments, LLC's motion to strike and quash service of summons and Defendant KS Capital Inc.'s motion to dismiss, Plaintiff filed a first amended complaint ("FAC"). (Dkt. No. 64.) On December 17, 2019, the Court granted in part and denied in part Defendant Kevin Prince's motion to dismiss the first amended complaint with leave to amend and granted KS Capital, Inc.'s motion to dismiss the first amended complaint and motion for more definite statement with leave to amend. (Dkt. No. 100.) On January 16, 2020, Plaintiff filed the operative second amended complaint ("SAC") against Defendants Miles Farquhar ("Farquhar"), Kevin Prince ("Prince"), FCI Lender Services, Inc. ("FCI Lender"), SC Financial Services ("SC Financial"), the Roger Sokoloff Family Trust dated 6/26/17 ("Roger Trust"), the McKenna Duggan Family Living Trust dated 2/5/2013 ("McKenna Trust"), James Garry Hebert ("James Hebert"), Michelle Hebert, Edgehill Investments, LLC ("Edgehill Investments"), and KS Capital Inc., dba Parse Mortgage Services ("KS Capital"). (Dkt. No. 101, SAC.) The SAC alleges the following thirteen causes of action: 1) violation of Truth in Lending Act ("TILA") and Regulation Z against all Defendants; 2) violation of Real Estate Settlement Procedures Act ("RESPA") against all Defendants; 3) concealment against all Defendants; 4) intentional misrepresentation as to Defendants FCI Lender, Prince, Farquhar, SC Financial and KS Capital; 5) negligent misrepresentation as to Defendants FCI Lender, Prince, Farquhar, SC Financial and KS Capital;; 6) unlawful and unfair business practices, Cal. Bus. & Prof. Code sections 17200 against Defendants FCI Lender, Prince, Farquhar, SC Financial and KS Capital;; 7) negligence as to all Defendants; 8) breach of fiduciary duty as to all Defendants; 9) breach of duty of loyalty as to all Defendants; 10) breach of covenant of good faith and fair dealing against all Defendants; 11) declaratory relief as to Defendants Roger Trust, McKenna Trust, James Hebert, Michelle Hebert, Edgehill, FCI Lender, Farquhar, SC Financial and KS Capital; 12) injunctive relief as to Defendants Roger Trust, McKenna Trust, James Hebert, Michelle Hebert, Edgehill, FCI Lender, Farquhar, SC Financial and KS Capital; and 13) conspiracy to violate TILA &

Regulation Z against all Defendants.  (Dkt. No. 101, SAC.)

On January 31, 2020, Lender Defendants filed a filed a motion to dismiss which is fully briefed.  (Dkt. Nos. 105, 114, 120.)  Defendants SC Financial and Farquhar filed their answers on February 21, 2020.  (Dkt. Nos. 109, 110.)  Defendant Prince was granted leave to file an answer fourteen days after the Court rules on the pending motions.  (Dkt. Nos. 104, 107.)  On February 21, 2020, Defendants FCI Lender and KS Capital filed their motions to dismiss which are fully briefed.   (Dkt. Nos. 111, 112, 123, 124, 125.)

### Factual Background

Decedent Steven Augusta and his wife, Anna Levy, owned and lived in a single family residence ("Family Home") located at 122 North Helix Avenue, Solana Beach, CA 92075 with their two daughters, ages 9 and 11. (Dkt. No. 101, SAC ¶¶ 3, 35.)  The Family Home was never rented or leased from January 1, 2007 through the present.  *(Id.* ¶ 35.)  Anna was married to Steven from March 21, 2007 until his death on April 18, 2018.  (*Id.* ¶ 36.)  Anna and Steven separated on January 21, 2018.  (*Id.*)  During the marriage, the decedent handled all of his finances until his death on April 18, 2018.  *(Id.)*  Anna had no knowledge about any of Steven's actions concerning the fraudulent loan.  (*Id.* ¶ 38.)

Steven and Defendant Prince were friends before engaging in the alleged fraudulent loan.  (*Id.* ¶ 40.)  Around September 2017, Steven consulted with Prince about taking out a second mortgage on the Family Home in the amount of $450,000.  (*Id.* ¶ 37)  Because Steven was not able to obtain a conventional loan, with the help of Prince, he created fake information and documents to qualify for a loan.  *(Id.* ¶¶ 39, 40.)  Prince advised Steven on the procedures he needed to take to obtain the loan.   (*Id.* ¶ 40.)  For example, Prince told Steven to falsely state he sought a business loan in order to "fund his municipal bond business."  (*Id.)*  They created a fake lease agreement to represent that the Family Home was a rental property, when it was not, in order to create the appearance that Steven earned more income than he really made so he could qualify for the loan.  (*Id.* ¶¶ 39, 40; *id.*, Ex. 1.)

With Prince's guidance and instruction, Steven completed and signed a Uniform Residential Loan Application where Steven wrote his monthly income was $30,000 per month even though he was actually making a little over $100,000 per year, or about $8,000 per month. (*Id.* ¶ 42; *id.*, Ex. 2.) At the time, Steven did not provide recent paystubs from 2017 showing his income which was barely $6,000 per month. (*Id.* ¶ 42.) He also indicated that the Family Home was his primary residence. (*Id.*) In an email between Steven and Prince on September 23, 2017, Prince provided Steven with instructions on how to proceed further in obtaining the loan fraudulently. (*Id.* ¶ 43.)

In September 2017, Steven approached two lending companies and received conditional approval letters but those companies ultimately decided against providing the loan. (*Id.* ¶ 44.) As a result, Prince put Steven in touch with Defendant Farquhar, a mortgage broker or loan agent, and his own company, Defendant SC Financial. (*Id.* ¶¶ 44, 46.) Despite apparent discrepancies in the loan, SC Financial extended a loan to Steven. (*Id.* ¶ 46.) Farquhar knew or should have known the terms of the loan were fraudulent. (*Id.* ¶ 49.) Defendant FCI Lender serviced the loan and collected the payments from Steven until his death on April 18, 2018. (*Id.* ¶ 46.) "The Promissory Note and Deed of Trust were subsequently entered into and signed by Defendants ROGER TRUST, MCKENNA TRUST, JAMES HEBERT, MICHELLE HEBERT, EDGEHILL, and KS CAPITAL acting as the loan agent, making each of them a party to the fraudulent lending transaction." (*Id.* ¶ 48.)

Farquhar knew or should have known the terms of the loan were fraudulent because several emails were exchanged between Steven and Farquhar where Steven and/or Prince provided him paperwork which put him on notice of deficiencies and discrepancies surrounding the conditions of the loan. (*Id.* ¶ 49.) In an email dated October 18, 2017, Prince informed Farquhar that he would provide him with "anything

he needed to facilitate a quick funding." (*Id.* ¶ 50; *id.*, Ex. 5[2].) This statement shows that Prince was desperate for a loan and was willing to take any steps necessary, such as providing fraudulent information, in order to obtain he loan. (*Id.* ¶ 52.) On October 19, 2017, Steven submitted a Business Purpose Letter to Prince stating that the loan was for a business purpose yet Prince and Farquhar knew or should have known that the loan was not a business loan but a loan on the family home. (*Id.* ¶ 53; *id.*, Ex. 7.) Another email on October 19, 2017 demonstrates Prince's explicit instruction to Steven on what a good Letter of Explanation should state which evidences influence to commit fraud. (*Id.* ¶ 54; *id.,* Ex. 8.) On October 20, 2017, Prince sent an email to Steven stating he needed a Letter of Intent (LOI) "back signed and dated" which evidences further fraud and dishonest intent by Prince and Farquhar. (*Id.* ¶ 55; *id.*, Ex. 9.) On October 25, 2017, Farquhar sent an email to Prince acknowledging there was a notice of default on the existing second mortgage but stated he would reach out to some investors who may not have a problem with that. (*Id.* ¶ 56; *id.*, Ex. 10.) On October 27, 2017, Steven emailed Farquhar a copy of his homeowners insurance policy which listed the Family Home address and Farquhar responded by asking Steven where he was living, and to send his address and asked whether he owned or rented the property. (*Id.* ¶ 57; *id.*, Ex. 11.) This email clearly shows that Farquhar was clearly aware that Steven's home address was the Family Home address and knowing that the Family Home was not a rental property, a loan could not have been lawfully created absent all the required disclosures for a residential mortgage loan. (*Id.* ¶ 57.)

Throughout the entire process from applying for the fraudulent loan, obtaining approval of the fraudulent loan and receiving the actual funds, Prince acted as a liaison between Steven and FCI Lender, Farquhar and SC Financial. (*Id.* ¶ 58.) The Family Home was acquired during their marriage so Anna has a community property interest in

---

[2] The Court notes that Exhibits 5 and 6 are identical.

the Family Home. (*Id.* ¶ 59.)

On April 18, 2018, Steven committed suicide by hanging himself with an electrical cord in his RV. (*Id.* ¶ 63.) After his death, Anna began receiving Notices of Default from FCI Lender about delinquent mortgage payments in May 2018. (*Id.* ¶ 64.) She continues to receive the Notices and threats of foreclosure. (*Id.*) Plaintiff argues that Defendants knew or should have known Steven could not pay the loan due to his financial state and the loan was void from its inception as violative of the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA"). (*Id.* ¶ 65.) Plaintiff will suffer enormous detriment and a forfeiture of her long-time family home through no involvement or fault of her own but rather, the fraudulent acts of Steven and each Defendant. (*Id.* ¶ 66.) On March 15, 2019, Anna was appointed by the probate court as the executor of Steven's estate in Case No: 37-2018-00021266-PR-PL-CTL. (Id. ¶ 11.)

## Discussion

### A.    Legal Standard on Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff. *al Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, leave to amend should be granted "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See Desoto*, 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

**B.    Legal Standard on Federal Rule of Civil Procedure 9(b)**

Where a plaintiff alleges fraud in the complaint, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) requires that the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation omitted). A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp*., 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted). As such "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124 (citing *Vess v. Ciba-*

*Geigy Corp. U.S.A.,* 317 F.3d 1097, 1106 (9th Cir. 2003)).  Rule 9(b) also applies to claims that are "grounded in fraud" or "sound in fraud."  *Vess v. Ciba-Geigy Corp., U.S.A.,* 317 F.3d 1097, 1103-04 (9th Cir. 2003).  Thus, to satisfy the specificity requirement of Rule 9(b), a plaintiff is required "to plead evidentiary facts" and the court must "consider what inferences these facts will support—despite the pitfalls and inefficiencies of such an analysis at the pleading stage. . . ."  *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995).

As to multiple fraud defendants, a plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'"  *Vegas v. JPMorgan Chase Bank, N.A.*, 654 F. Supp. 2d 1104, 1115 (E.D. Cal. 2009) (quoting *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F. Supp. 2d 1158, 1163 (C.D. Cal. 1998)).  In such a context, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).  A plaintiff cannot lump multiple defendants but must state the allegations as to each defendant separately concerning that defendant's alleged participation in the fraud.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (quotation omitted).  As to a fraud action against a corporation, a plaintiff must "allege the names of the employees or agents who purportedly made the fraudulent representations or omissions, or at a minimum identify them by their titles and/or job responsibilities."  *UMG Recordings. Inc. v. Global Eagle Ent'm, Inc.,* 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015).

**C.    Legal Standard on Federal Rule of Civil Procedure 12(e)**

Rule 12(e) provides that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  However, a motion for a more definite statement must be considered in light of the liberal pleading standards of Rule 8(a) (a complaint need only be a "short and plain statement of the claim

showing that the pleader is entitled to relief [.]"). *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994). Accordingly, motions for a more definite statement are generally viewed with disfavor and are rarely granted. *Margarita Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999). In assessing a motion under Rule 12(e), a court considers whether the complaint provides the defendant with a sufficient basis to frame a responsive pleading. *Federal Sav. and Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1060 (N.D. Cal. 1988). Generally, the court will require a more definite statement only when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Delta Educ., Inc. v. Langlois,* 719 F. Supp. 42, 50 (D.N.H. 1989); *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996) ("[A] motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading.").

**D.     Lender Defendants' Motion to Dismiss**

Lender Defendants move to dismiss the third cause of action for concealment; seventh cause of action for negligence, eighth cause of action for breach of fiduciary duty, ninth cause of action for breach of duty of loyalty, tenth cause of action for breach of covenant of good faith and fair dealing and twelfth cause of action for injunctive relief for failure to state a claim under Rule 12(b)(6).[3] Alternatively, they seek a more definite statement under Rule 12(e). Plaintiff contends she has sufficiently alleged facts to support these causes of action.

---

[3] Lender Defendants do not move to dismiss the first cause of action for violation of TILA and Regulation Z, second cause of action for violation of RESPA, eleventh cause of action for declaratory relief and the thirteenth cause of action for conspiracy to violate TILA and Regulation Z. The Court notes that while the introductory paragraph moves to dismiss the claim for declaratory relief and claim for conspiracy to violate TILA and Regulation Z, (Dkt. No. 105-1 at 11), no arguments are made on these causes of action and the conclusion paragraph in the motion does not move to dismiss them. (*Id.* at 21.)

**1.      Concealment, Negligence, Breach of Fiduciary Duty, and Breach of Duty of Loyalty**

The SAC alleges causes of action for concealment, negligence, breach of fiduciary duty, and breach of duty of loyalty.  On these claims, the SAC maintains that the "loan contract" created a fiduciary relationship between Lender Defendants and Steven to act for the benefit of Steven as his lender and in approving and disbursing the loan to him.  (Dkt. No. 101, SAC ¶¶ 91, 132, 140, 149.)  Steven impliedly placed his trust and confidence in them that they would properly inform him of and execute the terms of the loan.  (*Id.* ¶¶ 91, 140.)  The negligence claim additionally asserts that Lender Defendants had a duty to exercise reasonable care and skill in performing their duties by disclosing the true facts to Steven.  (*Id.* ¶ 133.)  They breached their duty to Steven by "inducing [him] to improperly sign fraudulent documents containing false representations, suppressions, and concealments, failing to counsel, failure to inform and explain, and charging excessive, unconscionable fees despite knowledge that [his] financial statements were false."  (*Id.* ¶ 134.)

"The elements of fraudulent concealment are: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff;[4] (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) as a result of the

---

[4] "To maintain a cause of action for fraud through nondisclosure or concealment of facts, there must be allegations demonstrating that the defendant was under a legal duty to disclose those facts."  *Los Angeles Memorial Coliseum Com. v. Insomniac, Inc.*, 233 Cal. App. 4th 803, 831 (2015) (emphasis added).  There are four circumstances under which that duty arises: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts."  *Burch,* 34 Cal. App. 5th at 349 (citation omitted).  In this case, Plaintiff argues there was a fiduciary duty between Lender Defendants and Steven.

concealment or suppression of the fact, the plaintiff sustained damage." *Burch v. CertainTeed Corp*., 34 Cal. App. 5th 341, 348 (2019) (citation omitted).

"The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *IIG Wireless, Inc. v. Yi,* 22 Cal. App. 5th 630, 646 (2018) (citation omitted). "The elements of a cause of action for breach of a duty of loyalty, by analogy to a claim for breach of fiduciary duty, are as follows: (1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2010) (citation omitted). Under California law, the elements of a claim for negligence are that: (1) defendant had a legal duty to plaintiff, (2) defendant breached this duty, (3) defendant was the proximate and legal cause of plaintiff's injury, and (4) plaintiff suffered damage. *Merrill v. Navegar, Inc.,* 26 Cal. 4th 465, 500 (2001). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Invs., Inc.,* 118 Cal. App. 4th 269, 278 (2004). The causes of action for concealment, breach of fiduciary duty, breach of duty of loyalty and negligence all require the allegation of either a fiduciary duty or ordinary duty of care between Lender Defendants and the decedent.

Lender Defendants argue that Plaintiff has not alleged facts that they, as lenders, had a fiduciary duty or a duty of care to Steven, the borrower. Plaintiff responds that under the authority of *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089 (1991), by providing a risky loan to Steven, Lender Defendants were acting beyond the traditional role of a conventional lender.

As a general rule, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal. App. 3d at 1095-96. Furthermore, because there is no duty of care when the lender is merely lending money, a lender also owes no fiduciary duty of care to a borrower in an

arm's length financial transaction. *Ragland v. U.S. Bank National Assn.,* 209 Cal. App. 4th 182, 206 (2012). As noted by the court of appeal in *Nymark*, "[t]he relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark,* 231 Cal. App. 3d at 1093 n. 1 (citing *Price v. Wells Fargo Bank,* 213 Cal. App. 3d 465, 476–478 (1989)). Because a commercial lender is entitled to pursue its own economic interests in a loan transaction, a fiduciary relationship between a lender and a borrower "is inconsistent with the obligations of a fiduciary which require that the fiduciary knowingly agree to subordinate its interests to act on behalf of and for the benefit of another." *Id.*

However, "liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." *Nymark,* 231 Cal. App. 3d at 1096. "Normal supervision of the enterprise by the lender for the protection of its security interest in loan collateral is not 'active participation' [in the financed enterprise beyond that of the ordinary role of a lender in a loan transaction]." *Id.* at 1097 (quoting *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980)). Factors that support a lender's active participation in a borrower's business is extensive control and shared profits. *Wagner*, 101 Cal. App. 3d at 35 (citing *Connor v. Great Western Sav. & Loan Ass'n.*, 69 Cal. 2d 850, 864 (1969) (lender was active participant in the home construction enterprise as it had the right to exercise extensive control over the enterprise and in addition to interest on the loan, it received substantial fees for making the loan)).[5]

_____

[5] Plaintiff argues that *Biakanja* factors cited in *Nymark* support her position. In *Nymark*, the court of appeal alternatively applied the *Biakanja* factors to determine whether the financial institution was acting beyond the usual domain of money lending. *Nymark*, 231 Cal. App. 3d at 1098. These factors are "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." *Id.* at 1098 (quoting *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958)). However, *Biakanja* only applies in the absence of privity of contract. *See Beacon Residential Cmty. Assn. v. Skidmore, Owings & Merrill LLP*, 59 Cal. 4th 568, 578 (2014) ("*Biakanja* set forth a list of

In opposition, Plaintiff claims that the Lender Defendants took actions that exceeded those of a conventional lender, and therefore, a fiduciary relationship or duty was created between them and the decedent.  (Dkt. No. 114, P's Opp. at 4.[6])  First, Plaintiff argues that Lender Defendants' active participation in fraudulent conduct constitutes conduct beyond the domain of usual money lending.  In support, she refers to the October 25, 2017 email from Farquhar to Prince stating "I knew he was behind but didn't realize NOD was filed . . . I will be reaching out to some of my investors who may not have a problem with that . . . ."  (Dkt. No. 101, SAC ¶ 56.)  Based on this email, Plaintiff asks the Court to draw an inference that Lender Defendants knew about and were willing to perpetrate the fraud.  (Dkt. No. 114 at 6.)

While Plaintiff is correct that the Court may make reasonable inferences from the allegations in the SAC, *see al Kidd*, 580 F.3d at 956, it is not required to make inferences based on speculation.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (this court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."); *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996) ("However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  While a complaint need not provide detailed factual allegations, it must allege facts sufficient to raise a right to relief that rises above the level of mere speculation. *Twombly*, 127 S. Ct. at 1969.  Here, an inference that Lender Defendants knew and were willing to perpetrate the alleged fraud based on comments in an email between two mortgage brokers, Farquhar to Prince, is based on speculation and not reasonable.  There are no facts or reasonable inferences to link Farquhar's statements to the Lender

---

factors that inform whether a duty of care exists between a plaintiff and defendant in the absence of privity."); *Bily v. Arthur Young & Co*., 3 Cal. 4th 370, 397 (1992), *as modified* (Nov. 12, 1992) (citing *Biakanja* as "a checklist of factors to consider in assessing legal duty in the absence of privity of contract between a plaintiff and a defendant").  Here, because Steven and Lender Defendants were in privity of contract, (Dkt. No. 101, SAC ¶ 48), the *Biakanja* factors do not apply.

[6] Page numbers are based on the CM/ECF pagination.

Defendants.

Second, Plaintiff summarily argues that Lender Defendants acted outside their normal lending role because conventional lenders do not make "excessive loan share rate loans on defaulted home loans made to look like commercial loans by their agents who package them. It is out of the normal underwriting to be emailing lenders as they create the packaging of the loan." (*Id.*) Plaintiff provides no legal authority in support of her position or factual support about how conventional lenders underwrite a loan. Moreover, she has not provided any emails between Lenders Defendants and Farquhar or any facts that Farquhar was acting as an agent for Lender Defendants. Furthermore, the SAC fails to provide any allegation of any relationship or communication between the Lender Defendants and Steven. Besides being a party to the Deed of Trust and Promissory Note evidencing the loan and related security interest, the SAC wholly fails to allege facts that the Lender Defendants were engaged in the alleged fraudulent loan transaction. Finally, Plaintiff has not provided any authority that because a lender makes riskier loans, it is acting outside its traditional role as a lender. Here, the SAC does not any allege any "active" conduct by Lender Defendants that go beyond the scope of lending money to Steven to support a duty of care between them and Steven under *Nymark*. Therefore, Plaintiff has failed to allege both a fiduciary duty and an ordinary duty of care by Lender Defendants to Steven.

Likewise, Plaintiff's citation to *Daniels v. Select Portfolio Serv., Inc*., 246 Cal. App. 4th 1150, 1180 (2016) for the proposition that a loan servicer owed a duty of care to a borrower is inapplicable because the borrower presented allegations of fraudulent conduct involving the servicer's alleged fraudulent conduct during a loan modification. Here, there is no allegation of fraudulent conduct regarding the servicing of Steven's loan. Further, Plaintiff's reference to *Lona v. Citibank, N.A.,* 202 Cal. App. 4th 89, 95 (2011) is also not supportive as the case did not address whether a lender owes a duty of care to a borrower.

Because Plaintiff has not alleged a breach of these duties, the causes of action for concealment, negligence, breach of fiduciary duty and breach of duty of loyalty must fail. The Court GRANTS Lender Defendants' motion to dismiss these causes of action.[7]

## 2. Breach of the Covenant of Good Faith and Fair Dealing

The SAC claims that the breach of covenant of good faith and fair dealing arising from the loan contract prohibited the Lender Defendants from taking actions that would unlawfully deny Steven of the protection that should have been attached to the agreement. (Dkt. No. 101, SAC ¶ 155.) Lender Defendants took actions "calculated to prohibit and deprive Steven of the benefits for which he bargained for", (*id.* ¶ 157), and they "refused to perform their obligations to Steven for the purpose of denying him the benefits that would have come with the proper residential loan." (*Id.*)

Lender Defendants argue that Plaintiff has failed to allege facts to support a breach of the covenant of good faith and fair dealing based on the Deed of Trust and Promissory Note because Steven received the funds under the loan. Plaintiff does not provide a response to Defendants' argument.

"'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 371 (1992) (citing Rest. 2d Contracts, § 205). "This covenant [of good faith and fair dealing] not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible

---

[7] The Court also notes that the claims for fraudulent concealment and negligence, which sound in fraud, must comply with Rule 9(b) which requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Kearns*, 567 F.3d at 1125 (internal quotation marks and citation omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged. '[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.'" *Vess*, 317 F.3d at 1106 (citations omitted). Here the concealment and negligence claims fails to comply with Rule 9(b) as there are no specific allegations as to each Lender Defendants conduct in the alleged fraud.

18cv2725-GPC(WVG)

by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose." *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960) (citing *Bewick v. Mecham*, 26 Cal. 2d 92, 99 (1945)). "It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers*, 2 Cal. 4th at 373. The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 349-50 (2000).

In this case, the loan contracts between Lender Defendants and Steven were the Deed of Trust and Promissory Note. (Dkt. No. 101, SAC ¶¶ 48, 85.) Besides conclusory allegations, Plaintiff has failed to allege conduct by Lender Defendants that violated the terms of their agreement or conduct that prohibited the performance of the contract. As one court notes, "[t]he purpose of the note and deed of trust is that respondents shall have the use of the funds loaned on the terms and at the interest rate specified in the note, and that appellant shall have the security provided by the deed of trust." *Milstein v. Sec. Pac. Nat'l Bank*, 27 Cal. App. 3d 482, 487 (1972). Here, there is no allegation that Steven was not provided the funds from the loan, and in turn, Lender Defendants obtained a security interest in the Family Home. These are obligations contemplated under the Deed of Trust and Promissory Note. Thus, the Court GRANTS Lender Defendants' motion to dismiss the claim for breach of the covenant of good faith and fair dealing.

### 3.    Injunctive Relief

The twelfth cause of action for injunctive relief seeks to enjoin all Lender Defendants from removing, evicting, or in any way interfering with Plaintiff's quiet and exclusive possession and occupancy of the Family Home, and to enjoin a trustee's sale of the Family Home. (Dkt. No. 101, SAC ¶ 173.)

Lender Defendants move to dismiss the injunctive relief cause of action arguing it is not a cause of action but, rather, a form of relief sought. Plaintiff responds that because she was granted a temporary restraining order, on November 1, 2018, while the

case was in state court, she is entitled to injunctive relief. Lender Defendants reply that there can be no inferences drawn from the temporary restraining order issued in state court because Lender Defendants were not parties to the action at that time, the TRO was issued ex parte and expired 15 days after the order was issued, and no further hearing on an order to show cause regarding a preliminary injunction was ever heard. Therefore, the TRO has no legal effect. The Court agrees that the prior TRO issued in state court does not support the injunctive relief in this case.

Injunctive relief is a remedy and not a separate cause of action. *See Long v. JP Morgan Chase Bank, Nat. Ass'n*, 848 F. Supp. 2d 1166, 1180 (D. Haw. 2012) (citing *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008)). "Injunctive relief may be available if Plaintiffs are entitled to such a remedy on an independent cause of action." *Ramos v. Chase Home Finance*, 810 F.Supp.2d 1125, 1132 (D. Haw. 2011).

Plaintiff may be entitled to injunctive relief if she eventually prevails on an independent claim and meets the necessary test for injunctive relief under Rule 65; however, it is not necessary to assert it as a cause of action to obtain such relief. Accordingly, the Court GRANTS Lender Defendants' motion to dismiss the injunctive relief as a cause of action.

In sum, the Court GRANTS Lender Defendants' motion to dismiss the third cause of action for concealment; seventh cause of action for negligence, eighth cause of action for breach of fiduciary duty, ninth cause of action for breach of duty of loyalty, tenth cause of action for breach of covenant of good faith and fair dealing and twelfth cause of action for injunctive relief.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

18

**E.    Defendants KS Capital, Inc. and FCI Lender Services, Inc.[8]**

KS Capital and FCI Lender both move to dismiss all thirteen claims against it under Rule 12(b)(6) for failure to state a claim, Rule 9(b) for failing to plead fraud allegations with particularity, and alternatively, Rule12(e) motion for a more definite statement.[9]  (Dkt. Nos. 111-1, 112-1.)  KS Capital contends Plaintiff has failed to address the pleading deficiencies the Court noted in its order granting KS Capital's prior motion to dismiss, (Dkt. No. 100 at 19-20).  FCI Lender argues that the SAC merely lumps FCI Lender with the other defendants and does not provide specific allegations as to its involvement in the alleged fraudulent loan transaction.  Plaintiff opposes both motions arguing she has sufficiently alleged all the causes of action in the SAC.

As a threshold matter, KS Capital asserts that the SAC fails to correct the deficiencies in the FAC and still fails to provide any assertions that it acted or failed to act and only provides conclusory allegations and lumps it with numerous defendants without specifically stating which defendant was involved in what action or inaction. The Court agrees.  Similar to the FAC, there are only two paragraphs in the SAC that specifically reference Defendant KS Capital.  In describing KS Capital, the SAC alleges that KS Capital "transacts or has transacted business with Steven Augusta, residing in San Diego County, as a loan servicer and/or mortgage broker.  At all times material to this complaint, acting alone or in concert with others, KS CAPITAL advertised,

---

[8] The Court notes that SC Capital and FCI Lender separately filed motions to dismiss. (Dkt. Nos. 111, 112.)  Both entities are represented by the same counsel and both motions are nearly identical in organization and argument.  Plaintiff filed two separate oppositions to address each Defendant's motion, yet the oppositions are nearly identical.  Therefore, in order to avoid duplication of analysis, the Court considers the motions of SC Capital and FCI Lender together.  On reply, SC Capital and FCI lender even filed a joint reply.  (Dkt. No. 125.)

[9] In their motions to dismiss, KS Capital and FCI Lender filed requests for judicial notice ("RJNs") of nearly identical documents consisting of documents from the Official Records of the San Diego County Recorder's Office and loan documents that are referenced in the SAC.  (Dkt. No. 111-2, FCI Lender's RJN; Dkt. No. 112-2, KS Capital's RJN.)  Plaintiff opposes the RJNs.  Because Plaintiff opposes the RJNs, and the Court did not rely on the documents in the RJNs, the Court DENIES FCI Lender and KS Capital's requests for judicial notice.

marketed, distributed, or sold the extension of credit to Steven Augusta residing in San Diego County and participated in the collection of those loans." (Dkt. No. 101, SAC ¶ 21.) Next, the SAC claims, "[t]he Promissory Note and Deed of Trust were subsequently entered into and signed by Defendants ROGER TRUST, MCKENNA TRUST, JAMES HEBERT, MICHELLE HEBERT, and EDGEHILL, with KS CAPITAL acting as the loan agent, making each of them a party to the fraudulent lending transaction." (*Id.* ¶ 48.) Then, in an attempt to cure the deficiencies in the FAC, Plaintiff adds KS Capital along with the named Lender Defendants concerning the allegations of alleged fraud without providing any facts as to KS Capital's conduct or role in the alleged fraudulent loan transaction. However, Lender Defendants' role is distinct from KS Capital's role in the loan transaction[10] and the SAC fails to allege the alleged fraudulent conduct of KS Capital. As a result, Plaintiff has failed to satisfy Rule 8 and Rule 9.

Similarly, FCI Lender argues that the allegations against it do not state a claim because it is also lumped together with the other defendants without specific allegations as to its role in the alleged transaction. The SAC describes FCI Lender as a servicer and/or mortgage broker. (Dkt. No. 101, SAC ¶ 12.) As to specific allegations concerning FCI Lender, the SAC states it "serviced the fraudulent loan and collected the loan re-payments from STEVEN prior to his suicide on April 18, 2018." (*Id.* ¶ 46.)

---

[10] While the SAC references KS Capital as a loan servicer, mortgage broker and loan agent, in the prior motion, Plaintiff acknowledged that KS Capital was not a lender as alleged in the FAC, but instead was the servicer of the loan. (*See* Dkt. No. 95 at 2, 10.) In its opposition, KS Capital admits that it "helped find the lenders to fund the loan but had no direct involvement with Steven." (Dkt. No. 112-1 at 9.) KS Capital explains that in its role as master servicer, it merely took the loan application prepared by Steven and his broker SC Financial and sought to see if lenders might be interested in funding the loan. (*Id.*) Even if KS Capital took on a role as liaison between Steven/SC Financial and the Lenders, the SAC fails to allege facts sufficient to state a cause of action for fraud. However, to the extent that discovery reveals facts to support allegations of fraud against KS Capital, Plaintiff may file a "timely motion for leave to amend for good cause shown." *See Global Plastic Sheeting v. Raven Indus.*, Case No. 17cv1670 DMS(KSC), 2018 WL 6920673, at *6 (S.D. Cal. May 31, 2018) ("Because Plaintiff has failed to correct the deficiencies noted in the Court's previous order, Defendant's motion to dismiss these claims is granted. Should discovery reveal facts supporting one or more of these claims, Plaintiff may file a timely motion for leave to amend for good cause shown.").

18cv2725-GPC(WVG)

"After STEVEN's death, ANNA began receiving Notices of Default from FCI LENDER regarding delinquent mortgage payments around May 2018." (*Id.* ¶ 64.)  FCI Lender continues to send Notices of Default and threats of foreclosure to Plaintiff "knowing full well the fraudulent activity behind the loan, and continues to **actively conceal those facts** from ANNA during their attempts to collect improper repayments." (*Id.* ¶ 93 (emphasis in original).)  As plead, it appears that FCI Lender was the servicer, not a mortgage broker in the loan transaction.  The remaining numerous allegations lump FCI Lender with the Lender Defendants as well as allegations with the mortgage brokers, Prince and Farquhar, but the SAC does not specify the role of FCI Lender, as servicer, in the alleged fraudulent loan transaction.  The role of lenders and mortgage brokers differ from the role of a servicer and the SAC fails to isolate FCI Lender's role as the servicer from the other defendants.  Accordingly, the SAC fails to comply with Rules 8 and 9 concerning FCI Lender.  Nonetheless, in the interest of being complete, the Court considers each of the causes of action alleged against KS Capital and FCI Lender.

### 1. Concealment, Intentional Misrepresentation, Negligent Misrepresentation, Negligence and UCL

The SAC alleges claims of concealment, intentional misrepresentation, negligent misrepresentation, negligence and UCL claims based on the execution of an allegedly fraudulent loan.

KS Capital and FCI Lender contend that all fraud tort claims fail under Rule 9(b). Plaintiff opposes arguing that where the defendants are the parties that possess all the information, she can state her facts with less specificity and particularity.

As stated above, under Rule 9, a party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom,* 486 F.3d at 553 (internal quotation marks omitted).  As such "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124 (citation omitted).  Rule 9(b) also applies to claims that are "grounded in fraud" or "sound in fraud." *Vess,* 317 F.3d at

1103-04.  As to multiple fraud defendants, a plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'"  *Vegas,* 654 F. Supp. 2d at 1115 (citation omitted).  In such a context, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme."  *Moore*, 885 F.2d at 541.  A plaintiff cannot lump multiple defendants but must state the allegations as to each defendant separately concerning that defendant's alleged participation in the fraud.  *Swartz*, 476 F.3d at 764-65.  As to a fraud action against a corporation, a plaintiff must "allege the names of the employees or agents who purportedly made the fraudulent representations or omissions, or at a minimum identify them by their titles and/or job responsibilities."  *UMG Recordings. Inc.,* 117 F. Supp. 3d at 1108.

Here, Plaintiff has failed to comply with Rule 9(b) for the fraud causes of action of concealment, intentional and negligent misrepresentation as well as the causes of action grounded in fraud of negligence and UCL claim.  *See Kearns*, 567 F.3d at 1126–27 (applying Rule 9(b) to fraud claims under the UCL); *Gibson v. Credit Suisse AG*, 787 F. Supp. 2d 1123, 1136 (D. Idaho 2011) (negligence sounding in fraud must comply with Rule 9(b)).  Plaintiff lumps KS Capital with the Lender Defendants without specifically alleging the conduct of KS Capital, as a loan agent/servicer, in the alleged fraudulent loan transaction.  Similarly, the SAC lumps FCI Lender with the Lender Defendants and also with the mortgage brokers without specifically alleging FCI Lender's conduct in the alleged fraud.   While Plaintiff may be given leniency in pleading fraud if the facts are in the possession of the defendants in limited cases of securities fraud, *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir 2001) ("Rule 9(b) may be relaxed to permit discovery in a limited class of corporate fraud cases where the evidence of fraud is within a defendant's exclusive possession."); however, "[t]o overcome such difficulties in cases of corporate fraud, the allegations should include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations."  *Moore v. Kayport Package Exp., Inc.*,

885 F.2d 531, 540 (9th Cir. 1989).  Even if the fraud pleading leniency afforded to securities fraud plaintiffs applied in this case, Plaintiff presents no specific acts or inaction as to KS Capital and FCI Lender that would create a reasonable inference or basis to connect SC Capital and FCI Lender's involvement in the alleged misrepresentation.  Accordingly, the Court GRANTS KS Capital and FCI Lender's motion to dismiss the concealment, intentional misrepresentation, negligent misrepresentation, negligence and UCL claims.

### 2. Breach of Fiduciary Duty and Breach of Duty of Loyalty

The SAC alleges a breach of fiduciary duty and breach of duty of loyalty against KC Capital and FCI Lender arguing there was a fiduciary relationship created between them and Steven.  (Dkt. No. 101, SAC ¶¶ 140-47; 149-53.)

KS Capital and FCI Lender argue the claims for breach of fiduciary duty and breach of duty of loyalty fail because there is no fiduciary relationship between them, as servicers, and Steven.  (Dkt. No. 111 at 17; Dkt. No. 112-1 at 18.)  Plaintiff opposes arguing there is a fiduciary duty.[11]

"The elements of a cause of action for breach of the duty of loyalty are virtually identical to those for breach of fiduciary duty." *E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp. 3d 1012, 1016 (N.D. Cal. 2016).  The Ninth Circuit has described the duty of loyalty as a "fiduciary-like" duty. *Thorman v. American Seafoods, Co*., 421 F.3d 1090, 1098 (9th Cir. 2005); *Otsuka v. Polo Ralph Lauren Corp*., No. C 07–02780 SI, 2007 WL 3342721, at *3 (N.D. Cal. Nov. 9, 2007) (construing claim styled as breach of fiduciary duty as claim for breach of the duty of loyalty); *Fowler v. Varian Assocs., Inc*., 196 Cal. App. 3d 34, 42 (1987) (characterizing a duty of loyalty owed by an employee as a fiduciary duty).  Therefore, both causes of action require the existence of a fiduciary

-------

[11] In her argument, Plaintiff appears to improperly conflate the standard for fiduciary duty with the ordinary duty of care.  (Dkt. No. 123 at 12-17; Dkt.  No. 124 at 12-17.)

duty.  *See IIG Wireless, Inc.,* 22 Cal. App. 5th at 646; *Huong Que, Inc.*, 150 Cal. App. 4th at 410.

California courts have held that there is no fiduciary duty between a lender and borrower.  *See Ragland,* 209 Cal. App. 4th at 206 (no fiduciary duty between lender and borrower in an arms-length transaction); *Perlas v. GMAC Mortg.*, 187 Cal. App. 4th 429, 436 (2010) ("there is no fiduciary relationship between the borrower and lender."); *Nymark,* 231 Cal. App. 3d at 1093 n. 1 ("[t]he relationship between a lending institution and its borrower-client is not fiduciary in nature.").  Similarly, courts have held that there is no fiduciary duty between a servicer and a borrower.  *See Castaneda v. Saxon Mortgage Services, Inc.,* 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009); *Moreno v. Citibank, N.A.,* No. C09-5339 CW, 2010 WL 1038222, at *3 (N.D. Cal. Mar. 10, 2010) ("Courts have similarly concluded that loan servicers do not owe a fiduciary duty to borrowers").  Accordingly, Plaintiff's claims for breach of fiduciary duty and breach of duty of loyalty fail to state a claim and must be dismissed.

### 3.    Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff alleges breach of the convent of good faith and fair dealing against Defendants KS Capital and FCI Lender.  (Dkt. No. 101, SAC ¶¶ 155-59.)

KS Capital and FCI Lender move to dismiss this claim because they are not alleged to be a party to any contract with Steven.  (Dkt. No. 111-1 at 18; Dkt. No. 112-1 at 18-19.)  Plaintiff opposes arguing that there was privity of contract between KS Capital and FCI Lender with Steven because there was a duty of care under the *Biakanja* factors.  (Dkt. No. 123 at 17-18; Dkt. No. 124 at 17-18.)

Plaintiff provides no legal authority to support her position and the Court questions her argument.  A breach of the covenant of good faith and fair dealing requires an underlying contract.  *See Carma Developers*, 2 Cal. 4th at 373 ("It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract.").  The SAC does not allege a contractual relationship between KS Capital and Steven or between FCI Lender

18cv2725-GPC(WVG)

and Steven.  Accordingly, the Court GRANTS dismissal of the claim for breach of the covenant of good faith and fair dealing.

### 4.  TILA and Regulation Z

The SAC alleges KS Capital and FCI Lenders as well as all the defendants failed to properly deliver proper TILA disclosures in violation of Regulation Z, violated 15 U.S.C. § 1632 by failing to properly make the required Good Faith Interest material disclosures of the loan terms, and failed to provide additional disclosures based on Steven's high cost loan.  (Dkt. No. 101, SAC ¶¶ 73-76.)

Defendants argues that since they are only servicers and not owners or assignees of the loan, they are not liable under TILA.  (Dkt. No. 111-1 at 15-16; Dkt. No 112-1 at 1-17.)  Plaintiff replies that both defendants are liable as "agents" of the Lender Defendants and had authority to represent and bind them to any acts taken regarding the loan documents.  (Dkt. No. 123 at 21-23; Dkt. No. 124 at 21-23.)  She argues that KS Capital directed and authorized the lenders' willful misconduct and fraudulent misrepresentations in obtaining the loan from Steven.  (Dkt. No. 123 at 22; Dkt. No. 124 at 22.)  Further Plaintiff contends that KSC "took on the loan obligation when it expressly authorized the agent role and assumed liability for willful misconduct."  (Dkt. No. 123 at 22; Dkt. No. 124 at 22.)

TILA provides that "[a] servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation."  15 U.S.C. § 1641(f).  Section 1641(f)(2) further states,

> **(2) Servicer not treated as owner on basis of assignment for administrative convenience**.
> A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation.

18cv2725-GPC(WVG)

15 U.S.C. § 1641(f)(2). "Subsection (f), in keeping with the theme of § 1641 as a whole, and the other subsections of § 1641, addresses only the assignee liability of a servicer, and sets out a general rule that a servicer must be the assignee-owner of the obligation to incur assignee liability. *Gale v. First Franklin Loan Servs*., 701 F.3d 1240, 1245 (9th Cir. 2012); *Rinegard-Guirma v. Bank of America, N.A.,* No. 3:10–cv–01065–PK, 2012 WL 1110071, at *10 (D. Or. Apr. 2, 2012) ("In other words, it is precisely the servicer's acquisition of ownership of the loan through 'an assignment of the obligation from the creditor or another assignee,' 15 U.S.C. § 1641(f)(2), that transforms the servicer from an entity with no liability under § 1641(f)(2) to one that can be held liable.").

Here, Plaintiff claims that KS Capital and FCI Lender are liable as agents of the Lender Defendants and "took on the loan obligation when it expressly authorized the agent role and assumed liability for willful misconduct. This is confirmed by the Servicing Agreement and is another fact subject to discovery." (Dkt. No. 124 at 22; *see also* Dkt. No. 123 at 22 ("FCI took on the loan obligation when it expressly consented to and adopted the loan servicer role and assumed liability for willful misconduct. This is confirmed by the multiple agreements between STEVEN and FCI and is another fact subject to discovery.") Yet, Plaintiff fails to provide legal authority that an assignee to a loan obligation can be created through an agency relationship. Plaintiff has failed to allege any facts that KS Capital and FCI Lender were assigned ownership of the loan obligation to be liable under TILA. Accordingly, the Court GRANTS KS Capital and FCI Lender's motions to dismiss the TILA/Regulation Z cause of action. Consequently, because the Court dismisses the TILA cause of action the Court necessarily DISMISSES the cause of action for Conspiracy to Violate TILA and Regulation Z.

### 5.   RESPA

The SAC alleges a RESPA violation of 12 U.S.C. § 2607(a). (Dkt. No. 101, SAC ¶¶ 87, 88.) Plaintiff claims that by charging a high commercial interest rate, at the end of the loan, Steven would have ended up paying about $800,000 more than he would have

paid if he had obtained a residential loan and this excessive amount constitutes a kickback barred by RESPA.  (*Id.*)

KS Capital and FCI Lender both maintain that the RESPA claims against them fail because the SAC does not allege they failed to comply with any required RESPA disclosures or notices and fail to allege actual damages as a result of the alleged RESPA violations.  (Dkt. No. 111-1 at 16; Dkt. No. 112-1 at 17.)  Plaintiff opposes arguing because KS Capital and FCI Lender owed a duty to Steven, this same duty applies to the RESPA claim.  (Dkt. No. 123 at 23; Dkt. No. 124 at 23.)

As an initial matter, Plaintiff makes a summary legal conclusion, without legal support, that if a duty of care exists, that duty also applies to a RESPA claim.  Again, the Court questions the legal soundness of Plaintiff's argument.  Plaintiff further argues that section 8(a) of the RESPA was violated because the higher cost loan to Steven would have required him to pay about $800,000 more than he would have paid with a residential loan and such monies constitute an improper kickback.

12 U.S.C. § 2607(a) provides,

> **(a)Business referrals.**  No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a).  (Dkt. No. 101, SAC ¶ 87.)  By its language, this provision relates to obtaining business referrals through kickbacks.  Here, the SAC does not state such an allegation.  Moreover, the alleged kickback of $800,000, even if the provision applied, would make the owner of the loan liable, not the servicer.  The SAC does not provide any allegations that KS Capital, as the master servicer, or FCI Lender, as the servicer, would have been subject to the $800,000 alleged kickback based on the higher interest rate.  Accordingly, Plaintiff has failed to allege a violation of RESPA against KS Capital and FCI Lender.

/ / /

### 6. Declaratory and Injunctive Relief

Defendants argue that the declaratory and injunctive relief causes of action should be dismissed because they are remedies, not separate causes of action. (Dkt. No. 111-1 at 18; Dkt. No. 112-1 at 19.) Plaintiff disagrees. (Dkt. No. 123 at 18; Dkt. No. 124 at 18.)

Because the Court dismisses all claims against KS Capital and FCI Lender, the Court also GRANTS dismissal of the relief sought for declaratory and injunctive relief. *See Solano v. Affinia Default Servs., LLC*, 768 Fed. App'x 725, 726 (2019) ("Because all of [plaintiff's] claims were properly dismissed, the district court properly denied [plaintiff's] requests for declaratory and injunctive relief because Solano had no claim upon which to request relief or remedies") (citing *Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1450 (9th Cir. 1992) (when underlying claims have been decided, the reversal of a denial of preliminary injunctive relief would have no practical consequences, and the issue is therefore moot); *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (in order "[t]o obtain declaratory relief in federal court, there must be an independent basis for jurisdiction")). Accordingly, the Court GRANTS dismissal of the declaratory and injunctive claims for relief as to KS Capital and FCI Lender.

### F. Leave to Amend

In the event the Court grants the motion to dismiss, Plaintiff seeks leave to file a third amended complaint ("TAC"). All moving Defendants oppose. To date, Plaintiff has already been granted leave to file two amended complaints and the Court has laid out the legal standards to support allegations under Rule 8 and Rule 9(b). Plaintiff cannot be granted unlimited attempts to amend her complaint.[12] Further, based on arguments presented in Plaintiff's oppositions, it does not appear she will be able to cure the deficiencies in her allegations. The key allegations of fraud concern loan origination and

---

[12] The Court also notes that the original complaint was filed in state court on October 23, 2018 almost a year and a half ago, and the case is still in its pleading stage.

not servicing or the lending of the money. Therefore, any attempts to extend the liability to the servicers or the lenders would appear to be futile. Thus, the Court DENIES Plaintiff's request for leave to file a TAC. *See Desoto*, 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401. Because the Court GRANTS dismissal without leave to amend, the Court need not address the Defendants' motion for a more definite statement.

**Conclusion**

Based on the above, the Court GRANTS Lender Defendants' motion to dismiss the third cause of action for concealment; seventh cause of action for negligence, eighth cause of action for breach of fiduciary duty, ninth cause of action for breach of duty of loyalty, tenth cause of action for breach of covenant of good faith and fair dealing and twelfth cause of action for injunctive relief. The Court also GRANTS KS Capital and FCI Lender's motions to dismiss all claims against them. The Court **vacates** the hearing set on April 10, 2020.

IT IS SO ORDERED.

Dated: April 6, 2020

Hon. Gonzalo P. Curiel
United States District Judge